RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10 / 17 / 11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LONNY LANE LINDSEY,<br>        Appellant | CIVIL ACTION<br>SECTION "P"<br>1:10-CV-01907 |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,<br>        Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Lonny Lane Lindsey ("Lindsey") filed an application for disability insurance benefits ("DIB") on September 29, 2008, alleging a disability onset date of April 16, 2008 (Tr. p. 95) due to "torn ACL, neck fusion, problems with right arm and hand" (Tr. p. 122). That application was denied by the Social Security Administration ("SSA") (Tr. p. 60).

A de novo hearing was held before an administrative law judge ("ALJ") on April 19, 2010, at which Lindsey appeared with his attorney and a vocational expert ("VE") (Tr. p. 26). The ALJ found that, although Lindsey suffers from severe impairments of "coronary artery disease and status post anterior cruciate ligament surgery to the right knee," he has the residual functional capacity to perform the full range of sedentary work and can perform work which exists in significant numbers in the national economy such as bench work assembler, lobby attendant/ticket taker, housekeeper, and

counter attendant (Tr. pp. 26-20).  The ALJ concluded the Lindsey was not disabled within the meaning of the Social Security Act as of the date of his decision on May 10, 2010 (Tr. pp. 20-21).

Lindsey requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Lindsey next filed this appeal for judicial review of the Commissioner's final decision.  Lindsey raises the following issues for review on appeal:

> 1.  The ALJ failed to discuss why he did not find Lindsey's condition meets the requirements of Listing 1.03.
>
> 2. Lindsey's allegations were improperly rejected without the assessment of his credibility which is required by the regulations.
>
> 3. The final decision does not comply with 20 C.F.R. § 404.1527(d) and S.S.R. 96-6p because the restrictions assessed by the claimant's treating orthopedic surgeon on April 30, 2010 were rejected without good cause.
>
> 4. The ALJ's failure to recognize that the record establishes non-exertional restrictions resulted in improper reliance on the grids and on vocational testimony which do not carry the Commissioner's burden of proof at the final step in the sequential evaluation process.

<u>Summary of Pertinent Facts</u>

1.

On May 19, 1994, when Lindsey was working as a lineman for a cable company, Lindsey was injured when he fell 25 feet because the

2

telephone pole he had climbed up broke and the pole landed across his torso (Tr. p. 173). Lindsey suffered a dislocated right wrist and a fracture/dislocation of the cervical spine (Tr. p. 183), which were repaired by Dr. James H. Buie, an orthopedic surgeon, with open reduction and pinning of the wrist and a Halifax plate of the C4-5 with fusion of the spine (Tr. p. 192, 219-225).

In April 1995, Dr. Wayne Brooks, a physical medicine and rehabilitation doctor, conducted an independent medical exam, including both a physical exam and an EMG/nerve conduction study (Tr. pp. 193-212), and found Lindsey has a good range of motion in his neck/shoulder but has cervical instability and cannot fully forward flex (Tr. pp. 199, 203), has a decreased range of motion in his right wrist with pain in his hand and wrist, median neuropathy and right carpal instability (Tr. pp. 200, 202-203), and has a decreased grip strength in his right hand (Tr. p. 200). Dr. Brooks assessed Lindsey with a whole person permanent partial impairment of 32% for the injuries he sustained in the May 19, 1994 work-related accident (Tr. p. 194).

In May 1995, Dr. Buie noted Lindsey had some limitation and local discomfort from the cervical incision, good range of motion with radiculopathy, symmetrical reflexes, and some pain and limitation of the wrist due to arthritis (Tr. p. 192). X-rays showed that Lindsey's cervical fusion was still not fully healed in October 1995 (Tr. p. 227). In October 1995, Dr. Buie noted Lindsey

3

had a 50% range of motion in his right wrist with tenderness and referred him to Dr. Hathcock for evaluation.  Dr. A.B. Hathcock found aseptic necrosis, lunate, in the right wrist (Tr. pp. 228-234).  In May 1995, Dr. Buie found Lindsey had discomfort and crepitation in his right wrist, and x-rays showed avascular necrosis of the lunate, arthritic changes, and a limited range of motion but good motor strength; Lindsey was treated with an injection (Tr. p. 235).  Dr. Buie further found Lindsey's cervical spine had an "acceptable range of motion" with soreness (Tr. p. 235).

On April 17, 2008, while Lindsey was on a pole hanging cable, he hyper-extended his right knee, resulting in mild swelling; the next day his knee "popped backwards," causing acute swelling and pain (Tr. p. 270).  On April 22, 2008, Lindsey had effusion and tenderness, but no instability (Tr. p. 270).  An MRI showed a non-displaced tear of the medial meniscus (ACL) with both acute and chronic changes (Tr. p. 269).  Lindsey had ACL reconstruction surgery with an Achilles tendon allograft in August 2008 with Dr. Michael Brunet, an orthopedic surgeon (Tr. p. 253-254, 266-267). A week later, Lindsey still had a little swelling in his right knee, but full extension, and could walk with a crutch; Lindsey began formal physical therapy (Tr. p. 248).  In October 2008, Lindsey's right quadricep was at 50% and he was continuing his physical therapy.

In December 2008, Lindsey had a heart attack (Tr. pp. 261, 289, 279).  Lindsey was diagnosed with coronary artery disease, a history of tobacco abuse and hepatitis B, and was prescribed aspirin, Coreg, Plavix, Zocor, and Lisinopril (Tr. pp. 289-290). Lindsey underwent a cardiac catheterization in the right coronary artery in January 2009 (Tr. p. 299).  In April 2009, Lindsey's cardiologist cleared him to resume his exercise program (Tr. p. 260); however, Lindsey had chest pain again in May 2009 (Tr. p. 259).  By July 2009, Lindsey's right knee no longer hurt, but cardiac issues prevented continuation of his physical therapy (Tr. p. 258).

In December 2009, Lindsey's functional capacity was evaluated following his ACL tear (Tr. pp. 313-316).  Lindsey has restricted ranges of motion at the cervical spine and right wrist, and has significant laxity in his right knee (Tr. p. 313).  Lindsey was found capable of occasionally or frequently lifting 20 pounds, occasionally carrying 30 pounds, frequently carrying 20 pounds, can occasionally kneel on the left knee only, cannot crouch, kneel on both knees, or crawl, can walk or stand frequently (1/3 to 2/3 of the workday), can walk ½ a mile, can only occasionally climb stairs, and cannot climb a ladder (Tr. pp. 313-314).  Lindsey also cannot work on non-level surfaces, climb poles, jump or cut (Tr. p. 315).  Lindsey was found to be capable of doing light work (Tr. p. 315).

In January 2010, Dr. Brunet reviewed Lindsey's functional evaluation and found Lindsey can perform light work and can no longer work as a lineman, due in part to permanent limitations in agility which affect his ability to climb (Tr. p. 342).  Dr. Brunet stated that Lindsey has a permanent impairment in the lower extremity of about 10% (Tr. p. 342).  In April 2010, Dr. Brunet stated that recovery from the ligament reconstruction, that Lindsey underwent after his 2008 ACL tear, was prolonged by his cardiac problems (Tr. p. 354).  Dr. Brunet further stated that Lindsey continues to have instability and popping of the right knee with residual laxity by 3mm Lachman,[1] representative of a breakdown or partial tearing of the reconstruction, which accounts for his knee pain and instability (Tr. p. 354).  Dr. Brunet stated that Lindsey needs to use either a brace or a cane and may need a knee replacement (Tr. p. 354).  Dr. Brunet stated that Lindsey will continue to have significant trouble with ordinary daily activities such as walking a block at a reasonable pace, banking, shopping, and use of standard public transportation requiring climbing steps or ramps, so at best Lindsey can do sedentary work (Tr. p. 354).

2.

---

[1] The Lachman's test for knee motion determines knee stability or laxity after an ACL injury or repair.  The American Academy of Orthopaedic Surgeons: Your Orthopaedic Connection, "ACL Injury: Does it Require Surgery?," *available at* http://orthoinfo.aaos.org/topic.cfm?topic=A00297; Wheeless'Textbook of Orthopedics, "Lachman Test", *available at* http://www.wheelessonline.com/ortho/lachman_test.

Lindsey testified at his April 2010 administrative hearing that he was 49 years old, had a high school education, and had not worked since April 16, 2008 (Tr. p. 29).  The VE testified that Lindsey's prior work as a construction lineman for a cable company was skilled, heavy work (Tr. pp. 30-31).

At the hearing, Lindsey's disability onset date was amended to October 1, 2008, the date Lindsey was first insured for disability insurance benefits (Tr. p. 32).

Lindsey testified that he tore the ACL in his right knee in an accident at work in April 2008 (Tr. p. 32-33); Dr. Brunet performed reconstructive surgery in August 2008, but Lindsey's knee is still unstable (Tr. pp. 33-34).  Lindsey testified he saw Dr. Brunet a couple of weeks before the hearing, and that Dr. Brunet talked to him about a knee replacement and told him to ride his bicycle daily (Tr. p. 34).

Lindsey testified he had a heart attack in December 2008 due to a blocked artery and was diagnosed with coronary artery disease; Lindsey received a stent in January 2009 and has not had any further heart attacks, although he has had chest pain (Tr. p. 35). Lindsey testified that he re-started physical therapy, but it has not helped his knee; he has to wear a knee brace to stabilize his knee and prevent it from hyper-extending (Tr. p. 37).  Lindsey explained that, when his knee hyper-extends, it bends backwards or toward the inside due to problems with the ACL and NCL ligaments

7

(Tr. p. 49). Lindsey testified that he can walk for about five minutes (Tr. p. 37).

Lindsey testified that has very little motion in his neck when he is looking down due to the cervical fusion and arthritis (Tr. p. 38), and no "motion" in his arms (Tr. p. 39). Lindsey testified he has throbbing pain in his right knee (Tr. p. 39). Lindsey testified that the orthopedist wants to check his knee every three months and had said he would probably have to do a knee replacement (Tr. p. 39) because that would be the only way to stabilize it (Tr. p. 46). Lindsey also testified that Dr. Brunet said his quadricep was in very poor shape, so he had a stationary bike to ride at home (Tr. p. 46).

Lindsey testified that he plays with his fourteen month old daughter every day (Tr. p. 39); he is able to lift her with his left hand and right forearm (Tr. p. 40). Lindsey testified that his daughter weighed about 25 pounds at that time (Tr. p. 40). Lindsey further testified that he likes to fish, but had not done so for a few months (Tr. p. 40). Lindsey testified that, when he drives, the vibration of the steering wheel makes his right arm and hand throb (he has arthritis in his right hand), but he can drive with his left hand (Tr. pp. 40-41). Lindsey wears a wrist support he received after an accident in 2007 because it helps reduce the pain (Tr. p. 40). Lindsey testified he can lift only five pounds with his right hand, and that he is right handed (Tr. pp. 40-41).

8

Lindsey testified he cannot do light work because of the pain in his neck and arm, and because he cannot stand and walk for six out of eight hours (Tr. p. 41). Lindsey testified he can stand for about 15 minutes, and he has no problems sitting, so long as he is looking straight ahead (Tr. p. 41). Lindsey testified that his wife goes to the grocery store with him, but he pays bills by himself (Tr. p. 41). Walking around in the store makes Lindsey's knee throb (Tr. p. 49). Climbing on ramps or high steps, such as to enter a bus or train, is difficult for Lindsey (Tr. p. 50). Lindsey testified that he mows his grass, but usually has to stop because the vibration hurts, and he trims the hedges and washes dishes (Tr. pp. 43, 48). Lindsey testified that he also watches TV during the day (Tr. p. 43), and lies down for about three hours a day (Tr. p. 47). Lindsey testified that he has trouble writing, lifting, squeezing, driving, turning a doorknob, and opening a jar or bottle with his right hand (Tr. p. 48).

Lindsey testified that, on the day of the hearing, his pain was a 5 out of 10 (Tr. p. 42). Lindsey testified that he takes Tylenol Arthritis for pain and Excedrin Migraine for headaches, and neither causes side effects; although his doctor prescribed Vicodin and Lortab, Lindsey cannot take those because of his heart problems (Tr. p. 42). Lindsey testified that, if he did not take any medication, his pain would be an 8 out of 10 (Tr. p. 42). Lindsey testified that something is always hurting-his knee, neck or arm-

9

but he injured his neck and arm in 1994 and has learned to live with that pain (Tr. p. 42). Lindsey testified that pain probably affects his concentration some (Tr. p. 43). Lindsey also takes nitrates for chest pain (Tr. p. 47), usually just twice a week (Tr. p. 53). The nitroglycerin gives him a headache, for which he takes Excedrin Migraine and lies down for about thirty minutes (Tr. p. 53). Lindsey also testified that he uses a cane when he does not wear his knee brace, but he usually wears his knee brace (Tr. pp. 52-53).

Lindsey testified that the December 2009 functional capacity evaluation took between one and two hours to complete (Tr. p. 44). Lindsey testified he had to lift about five pounds during the exercise part of the test (Tr. p. 45), and that he can lift five pounds for eight hours or for five-eight hour days in a week (Tr. p. 45).

Lindsey testified that he cannot do a desk job because he has a difficult time looking down, and he cannot write because his arm starts hurting (Tr. p. 46). Lindsey testified he can look down for a couple of minutes before he has to lift his head for three to five minutes (Tr. pp. 48-49).

The ALJ posed a hypothetical to the VE which involved a person limited to doing light work that does not require overhead reaching (Tr. p. 50). The VE testified that such a person would not be able to do any of Lindsey's past work (Tr. p. 50). The VE also

10

testified that Lindsey's past work did not involve skills that are transferrable to the light or sedentary level (Tr. p. 50).  The VE testified that such an individual could perform light, unskilled work such as lobby attendant or ticket taker (SOC 39-3031,[2] 106,700 jobs in the national economy, 900 jobs in Louisiana), housekeeping cleaner (SOC 37-2012 (915,890 jobs in the national economy, 14,460 in Louisiana), or cafeteria counter attendant (SOC 35-3022, 541,370 jobs in the national economy, 4,710 in Louisiana) (Tr. p. 51).

The ALJ posed a second hypothetical involving an individual who can perform sedentary work with limited overhead reaching (Tr. p. 51).  The VE testified that such an individual could perform work in bench work assembly jobs (SOC 51-2099, 330,940 jobs in the national economy, 830 in Louisiana).

The third hypothetical posed by the ALJ involved an individual who can perform sedentary work with the option of sitting or standing as needed, or taking a five to ten minute break to stand or stretch every hour (Tr. p. 52).  The VE testified there were no jobs that such a person could perform (Tr. p. 52).

At the conclusion of the hearing, Lindsey's attorney argued

---

[2] "SOC" is the *Standard Occupational Classification* system used by federal statistical agencies to classify workers into occupation categories for the purpose of collecting, calculating, or disseminating data.  See United States Department of Labor, Bureau of Labor Statistics, Standard Occupational Classification, at http://www.bls.gov/soc/.  See also, 20 CFR § 404.1566(d) (the Social Security Administration takes administrative notice of reliable job information available from various governmental and other publications).

that Lindsey meets Listing 1.03.

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Lindsey (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing the claimant is capable of performing work in the national economy. <u>Greenspan</u>, 38 F.3d at 237.

In the case at bar, the ALJ found that Lindsey was first insured for disability insurance benefits on October 1, 2008, has not engaged in substantial gainful activity since October 1, 2008, that his disability insured status expired on December 31, 2010, and that he has severe impairments of coronary artery disease and status post anterior cruciate ligament surgery to the right knee, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix I (Tr. p. 16). The ALJ also found that Lindsey is unable to perform his past relevant work as a cable television line technician (Tr. p. 19).

At Step No. 5 of the sequential process, the ALJ further found that Lindsey has the residual functional capacity to perform the full range of sedentary work (Tr. pp. 18-19). The ALJ found the claimant is a younger individual with a high school education and that transferability of work skills is not relevant (Tr. p. 19). The ALJ concluded there are a significant number of jobs in the national economy which Lindsey can perform such as bench work assembler, lobby attendant/ticket taker, housekeeping, and counter attendant and, therefore, Lindsey was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on May 10, 2010 (Tr. pp. 20-21).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is

presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have

14

authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."   Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Issue 1 - Listing 1.03

First, Lindsey contends the ALJ erred in failing to discuss why he did not find Lindsey's condition meets the requirements of Listing 1.03.  The ALJ did not discuss Listing 1.03 or any other listing in his opinion, despite the fact that Lindsey's attorney specifically raised the issue of Listing 1.03 at the administrative hearing.

Where the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant will be presumed to be disabled.  This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations.  See 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).

15

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he/she reached the conclusion that the claimant's symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any listing is beyond meaningful judicial review. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007), and cases cited therein. If the court determines the ALJ erred in failing to state any reasons for an adverse determination at step 3, the court must then determine whether the error was harmless. Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. Audler, 501 F.3d at 448, and cases cited therein.

Since the ALJ in this case found only that Lindsey did not meet or equal any of the Listings, and erred in failing to explain why he found Lindsey did not meet Listing 1.03, the court must determine whether the error is harmless.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. Cieutat v. Bowen, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, Selders v. Sullivan, 914 F.2d 614, 619 n. 1 (5th Cir. 1990). A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed.

16

2d 967 (1990).  See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990).  For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 110 S. Ct. at 891.  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885 (1990); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990) (claimant must provide medical findings that support each of the criteria for the equivalent impairment evaluation); 20 C.F.R. § 404.1526 (medical findings must be at least equal in severity and duration to the listed findings).

Lindsey argues that he meets Listing 1.03 of Appendix I. Listing 1.03 states: "Reconstructive surgery or surgical arthrodosis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

Listing 1.00B2b defines the inability to ambulate effectively as:

> "an extreme limitation of the ability to walk: i.e., an impairment(s) that interferes very seriously with the

individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the *use of a hand-held assistive device(s) that limits the functioning of both upper extremities*. ...(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." (Emphasis added.)

It is clear that Lindsey does not meet Listing 1.03 because he does not require the use of hand-held assistive devices (such as two canes or a walker) which limit the functioning of *both* of his upper extremities; Lindsey testified that he usually uses a knee brace instead of a cane, and testified as to the use of only one cane when he is not wearing a brace.

Since Lindsey has not carried his burden of proving he meets Listing 1.03, the ALJ's error in failing to analyze Listing 1.03 was harmless. This issue is meritless.

Issue 2 - Credibility Assessment

Next, Lindsey contends his allegations were improperly rejected by the ALJ without the assessment of credibility which is

required by the regulations in Social Security Ruling 96-7p.

The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983).  Also, Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991).  The ALJ's decision on the severity of pain and other subjective symptoms is entitled to considerable judicial deference.  James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Lindsey's pain and credibility (Tr. p. 19):

> "After a careful review of the evidence of record and the hearing testimony, the undersigned finds that the claimant compromises his credibility. Records indicate that the claimant's subjective complaints are disproportionate to the objective medical findings as to the right knee and heart, and his allegations of neck and arm pain are not supported by any treatment evidence. Dr. Brunet reported that the claimant has some attenuation of his reconstruction as evidenced by mildly positive Lachman and indicated that further surgery is needed.  Although no medical source has limited the claimant to this extent, the undersigned concludes that a range of sedentary work would be well within the claimant's powers.  The undersigned considered the

factors described in 20 C.F.R. 404.1529(c)(3) and Social
Security Ruling 96-7p and concludes that the claimant's
allegations of disabling symptoms and limitations cannot
be accepted, and that the residual functional capacity
finding in this case is justified."

The ALJ's finding that Lindsey's complaints of neck and arm
pain "are not supported by any treatment evidence" is incorrect.
Lindsey had a three level fusion of his cervical spine as well as
an open reduction of his wrist in 1994 with ensuing avascular
necrosis and arthritic changes, following his on-the-job injuries.
Lindsey had follow-up treatments for both due to pain and
limitations in his ranges of motion. Therefore, the ALJ's finding
that there are no "treatments" that support Lindsey's claims of
pain is erroneous.

Since substantial evidence does not support the conclusions of
the ALJ and the Appeals Council that there was no evidence to
support Lindsey's allegations of pain and limitations, their
decision is incorrect as a matter of law. However, this does not
entitle Lindsey to a decision in his favor based upon the existing
record. The record is simply inconclusive as to whether there are
any jobs existing in sufficient numbers in the national economy
which Lindsey can perform, given his true impairments. Therefore,
Lindsey's case should be remanded to the Commissioner for further
proceedings.

Issue 3 - Treating Physician

Next, Lindsey contends the final decision does not comply with

20 C.F.R. § 404.1527(d) and S.S.R. 96-6p because the restrictions assessed by the claimant's treating orthopedic surgeon, Dr. Brunet, on April 30, 2010 were rejected without good cause.  Dr. Brunet stated that, due to the breakdown and partial tearing of the reconstruction in Lindsey's knee, Lindsey continues to have instability and pain, and can only do sedentary work (Tr. p. 354). This opinion coincides with the ALJ's conclusion that Lindsey can only do sedentary work.

Generally, the opinion of a treating physician deserves to be given greater weight than that of a non-treating or consulting physician.  Carry v. Heckler, 750 F.2d 479, 484 (5th Cir. 1985). However, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings.  Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983).  An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981).

Dr. Brunet's opinion was that, at best, Lindsey can perform only sedentary work (Tr. p. 354).  The ALJ stated that Dr. Brunet's opinion was not accepted because he believed Lindsey's ability to work was more limited than Dr. Brunet had found (Tr. p. (Tr. p. 19).  The ALJ then found Lindsey can perform the full range of

21

sedentary work, in accordance with Dr. Brunet's opinion, and the ALJ posed a hypothetical to the VE that limited Lindsey to sedentary work except work which requires more limited reaching overhead (Tr. p. 51). Therefore, Lindsey's argument, that the ALJ rejected Dr. Brunet's limitations, is clearly erroneous.

However, the ALJ then reached the contrary conclusion that Lindsey can do "sedentary work" such as bench work assembler, lobby attendant/ticket taker, housekeeping, and counter attendant (Tr. p. 20). Unfortunately, the VE testified that all of those jobs except bench work assembler are *light level work*. Therefore, the ALJ erred in concluding both that Lindsey can only do sedentary work *and* that he can perform light work jobs such as lobby attendant/ticket taker, housekeeping, and counter attendant.

However, the ALJ's error appears to be harmless, since the ALJ also found that Lindsey can work as a bench work assembler, work which is sedentary (and does not require more than occasional reaching overhead). Therefore, this issue is meritless.

Issue 4 - Non-Exertional Limitations

Finally, Lindsey contends the ALJ's failure to recognize that the record establishes non-exertional restrictions resulted in improper reliance on the grids and vocational testimony which do not carry the Commissioner's burden of proof at the final step in the sequential evaluation process. Specifically, Lindsey contends the ALJ failed to recognize that he has non-exertional limitations

22

which made reliance on Appendix II (the "grids") inappropriate, and he failed to include those limitations in his hypothetical to the VE.

When the ALJ found that Lindsey could not return to his past relevant work, the burden shifted to the Commissioner to show that Lindsey can perform other work in the national economy.  Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).  The law provides that the Commissioner can meet that burden if he can prove that Lindsey's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") that directs a conclusion that the claimant is not disabled.  See Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).  Also, Harrell v. Bowen, 862 F.2d 471, 478 (5th Cir. 1988).

Generally, however, the Guidelines may not be applied when a claimant suffers solely from a nonexertional impairment.  Pate v. Heckler, 777 F.2d 1022, 1026 (5th Cir. 1985), citing Martin v. Heckler, 748 F.2d 1027, 1034-35 (5th Cir. 1984).  Also, Broussard v. Bowen, 828 F.2d 310, 313 (5th Cir. 1987); Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986).  Since the Guidelines are predicated on an individual's having an impairment which manifests itself by limitations in meeting strength requirements of jobs, they may not be fully applicable where the nature of an

individual's impairment does not result in such limitations, e.g. certain mental, sensory, or skin impairments. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments. 20 C.F.R. Subpt. P, App. 2, §200.00(e). Broussard v. Bowen, 828 F.2d 310, 313 (5th Cir. 1987).

In Lindsey's case, the ALJ did not rely on the grids. Instead, he posed hypotheticals to a vocational expert and accepted the VE's testimony as to whether there was any work Lindsey can perform. As stated above, the hypothetical which shows Lindsey can do bench assembly work was not based on the full range of sedentary work and was more restrictive than Dr. Brunet's assessment that Lindsey can do sedentary work.

Moreover, although Lindsey contends the ALJ failed to include his non-exertional limitations in his hypothetical, Lindsey does not state what his non-exertional limitations are and how they affect his ability to work.

Since Lindsey has not carried his burden of showing the ALJ relied on the grids and ignored non-exertional limitations, this issue is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Lindsey's case be REMANDED to the Commissioner for further proceedings

consistent with the view expressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN *FOURTEEN* (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 17th day of October, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE